## Commonwealth v. Morrison

*Edgar B. Bayley, Jr.,* for Commonwealth.
*George F. Douglas, Jr.,* for defendant.

SHUGHART, P. J., November 8, 1971.—The above defendant was arrested on April 24, 1971, and charged with the offense of operating a motor vehicle while under the influence of intoxicating liquors, which is a violation of §1037 of The Vehicle Code, 75 PS §1037. Following the arrest, a chemical test of defendant's breath was taken at the Carlisle police station.

Defendant has moved to suppress the results of the breath-o-lyser test on the grounds that the police did not inform defendant that he could have a physician of his own choosing administer a breath or blood test to him at the same time. There was testimony by a police officer that defendant was advised that he could have a physician examine him, but for the purposes of this opinion we shall assume that no such advice was given.

Section 624.1 of The Vehicle Code, as amended, 75 PS §624.1, provides in subsection (a) that:

"Any person who operates a motor vehicle or tractor in this Commonwealth, shall be deemed to have given his consent to a chemical test of his breath, for the purpose of determining the alcoholic content of his blood: . . . ."

Subsection (g) provides:

"The person tested shall be permitted to have a physician of his own choosing then and there administer a breath or blood chemical test in addition, and the results of such tests shall also be admissible in evidence."

Defendant contends that this latter provision makes it incumbent upon the police officer making the arrest and/or giving the test to advise defendant of the provisions of subsection (g), supra. Defendant's position finds support in the case of Commonwealth v. Dierkes, 51 D. & C. 2d 389. On the other hand, a contrary result was reached in the case of Commonwealth v. Thompson, 52 D. & C. 2d 260.

In considering whether there is an invasion of the constitutional rights of defendant, we must first recognize that we are here concerned with physical evidence rather than selfincriminating statements. In the Dierkes case, the court relied upon Commonwealth v. Bonser, 215 Pa. Superior Ct. 452, in requiring the officer to advise the driver of the provisions of §624.1(g). The Bonser case, however, dealt with the *utterance of incriminating statements* by a defendant charged with operating a motor vehicle while under the influence of liquor without benefit of Miranda warnings. Here we are not considering oral statements; therefore, neither the Bonser case nor Miranda v. Arizona, 384 U. S. 436, 16 L. ed. 2d 694, 86 S. Ct. 1602 (1966), is involved.

In Schmerber v. California, 384 U. S. 757, 16 L. ed. 2d 908, 86 S. Ct. 1826 (1966), which also involved a chemical test for intoxication, the Supreme Court

made a careful distinction between the Fourth and Fifth Amendment rights:

" '[T]he prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof.' . . .

"It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers. . . . On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it. . . .

"In the present case, however, no such problem of application is presented. Not even a shadow of testimonial compulsion upon or enforced communication by the accused was involved either in the extraction or in the chemical analysis. Petitioner's testimonial capacities were in no way implicated; indeed, his participation, except as a donor, was irrelevant to the results of the test, which depend on chemical analysis and on that alone. Since the blood test evidence,

although an incriminating product of compulsion, was neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner, it was not inadmissible on privilege grounds."

This distinction has been recognized in Pennsylvania: Commonwealth v. Statti, 166 Pa. Superior Ct. 577, 582. In U.S. ex rel. Harris v. Hendricks, 423 F.2d 1096 (3rd Circuit), the court said:

"Moreover, it has been squarely held that the Miranda doctrine does not require that a suspect be given a specific warning of his Fourth Amendment rights. . . ."

We conclude therefore that the failure to advise defendant of the provisions of §624.1(g) of The Vehicle Code did not violate any constitutional right.

The next question posed is whether or not the legislature intended to confer upon persons charged with operating a motor vehicle while under the influence of intoxicants a right or privilege to have the arresting officer advise defendant that he could have a physician of his own choosing then and there administer a blood or chemical test to him. We must start with the proposition that had this been the legislative intention, the legislature could have so stated. Additionally, the amendment of §624.1(g) in 1968 was two years after the United States Supreme Court handed down the Miranda decision which required that an individual be advised of his rights before interrogation: Article IV §51(5), Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §551.

In People v. Kerrigan, 8 Mich.App.216, 154 N.W. 2d 43 (Ct. of App. 1967), the Court of Appeals in Michigan had before it for interpretation and construction a statute with a provision very similar to that contained

in the statute here involved. The statute in question provided:

". . . A person charged with driving a vehicle while under the influence of intoxicating liquor who takes a chemical test . . . *shall be given a reasonable opportunity to have a person of his own choosing, administer one of the chemical tests. . . .*" (Italics supplied.)

The court held that this provision did not require that the police advise him of the foregoing provision of the statute. The court said:

"Defendant had a right to demand one of the chemical tests provided for by statute but did not do so. . . . The police did not advise him of such right . . . . we do not read the statute to require the police to *advise the defendant* of his right to take such a test. The right in question on appeal is a statutory and not a constitutional right. While an accused must be advised of many constitutional rights, he need not be advised of all of his statutory rights unless the statute expressly requires it."

In this case the legislature did not expressly require the police to advise defendant that he could have a test administered by his own physician. Further, there is nothing in the act to indicate an intention on the part of the legislature that the provisions of §624.1(g), which defendant is presumed to know, should be specifically made known to him by the police before taking a test.

For these reasons, the motion to suppress must be overruled.

## ORDER OF COURT

And now, November 8, 1971, for the reasons set forth above, the motion to suppress is overruled and the petition dismissed.